UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

NEW YORK LIGHT ENERGY, LLC,

                Debtor.

Case No.  15-11121
Chapter 7

CHRISTIAN H. DRIBUSCH,

                Plaintiff,

v.

Adv. No.  17-90019

GROSS ELECTRIC,

                Defendant.

Appearances:

**The Dribusch Law Firm**
*Attorney for the Chapter 7 Trustee*
1001 Glaz Street
East Greenbush, NY 12061

Christian H. Dribusch, Esq.

**Couch Dale Marshall P.C.**
*Attorneys for Gross Electric*
1187 Troy Schenectady Road
Latham, NY 12110

Kimberlee Dale Marshall, Esq.
Mark Couch, Esq.

**MEMORANDUM-DECISION AND ORDER**

The matter before the Court is a Motion for Summary Judgment filed by the Chapter 7

Trustee.  The Court has jurisdiction over this core matter pursuant to 28 U.S.C. § 157(a), (b)(1),

and (b)(2).

FACTS

The Debtor, New York Light Energy, LLC, developed and installed solar arrays in New

York and Massachusetts.  (Case No. 15-11121, ECF No. 7.)  The Defendant, Gross Electric,

-1-

performed electrical work related to the installation of solar panels on several of the Debtor's projects. (ECF No. 10). On January 20, 2015, Alex Lieb, CEO for the Debtor, signed an Affidavit in Support of Judgment by Confession (the "Agreement") on behalf of Debtor, in which the Debtor confessed $1,463,308.38, plus interest, to be due and owing and agreed to pay $161,283.07 per month for eleven months. The Debtor made two payments under the terms of the Agreement. The first payment was made by ordinary business check dated February 20, 2015, and cashed on March 2, 2015. The second payment was also made by ordinary business check dated March 19, 2015, and cashed March 30, 2015. Defendant's proof of claim indicates that, as of December 9, 2014, the Debtor owed the Defendant $1,451,547.64 for services invoiced from March to October 2014. (Case No. 15-11121, Claim No. 27.)

## PROCEDURAL HISTORY

The Debtor filed for bankruptcy under chapter 11 on May 27, 2015.[1] The cases were voluntarily converted to chapter 7, and Christian Dribusch, Esq., was appointed as Chapter 7 Trustee on October 20, 2016. The Chapter 7 Trustee commenced this adversary proceeding seeking to recover the value of the two payments the Debtor made to Defendant in the first half of 2015 as either preferences under 11 U.S.C. § 547 or fraudulent transfers under 11 U.S.C. § 548. The Defendant answered the complaint and pled two affirmative defenses under 11 U.S.C. § 547(c).[2] The Trustee moved for summary judgment on the preference cause of action. The Court held a hearing on the Motion on October 25, 2017. The Trustee filed a Supplemental

---

[1] The Debtor is comprised of five affiliated entities, each of which filed its own case (Case Nos. 15-11122, 15-11123, 15-11124, 15-11125). The Court granted the Debtor's Motion for Joint Administration on May 28, 2015 (ECF No. 23) and consolidated the cases on August 29, 2018. (ECF No. 605).
[2] The Defendant also pled that the payments were not made within the preference period as a third affirmative defense.

Memorandum of Law on October 24, 2017, and the Court took the matter on reserve on October 25, 2017.

## DISCUSSION

**Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, the Court should grant summary judgment to the moving party if it determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting F.R.C.P. 56(c)) (internal quotation marks omitted). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, 2008 WL 902184 *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd in part, remanded in part*, 375 F. App'x 73 (2d Cir. 2010). If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significantly probative" evidence that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal citations and quotation marks omitted).

**The First Cause of Action Under 11 U.S.C. § 547**

The Trustee argues that the two payments here meet all the requirements of preferential transfers under § 547(b), making the Defendant liable pursuant to 11 U.S.C. § 550. The Defendant contends that the Trustee has failed to establish, or that issues of material fact exist, as to three of the five elements. Specifically, the Defendant argues (1) that the payments were not on account of an antecedent debt because the Debtor paid on or before the due date; (2) that the Debtor was not insolvent at the time of the transfers; and (3) that at least one of the payments was made prior to ninety days before the filing of the petition.

Section 547(b) sets forth the elements for preferential transfers and states, in part, that:

"[T]he trustee may avoid any transfer of an interest of the debtor in property–
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made–
     (A) on or within ninety days before the date of the filing of the petition; [and]
     . . .
  (5) that enables such creditor to receive more than such creditor would receive if–
     (A) the case were a case under chapter 7 of this title;
     (B) the transfer had not been made; and
     (C) such creditor received payment of such debt to the extent provided by the provisions of this title . . . ."

11 U.S.C. § 547(b)(1)–(5). The Trustee bears the burden of proving the five elements by a preponderance of the evidence. *See* 11 U.S.C. § 547(g). Once the Trustee establishes a preferential transfer, the burden shifts to the Defendant to prove its nonavoidability under § 547(c). *Id.*; *Corp. Food Mgmt., Inc. v. Suffolk Cmty. Coll., (In re Corp. Food Mgmt., Inc.)*, 223 B.R. 635, 641 (Bankr. E.D.N.Y. 1998).

The Court finds that the Trustee has established that the two transfers at issue satisfy all five elements. The parties do not contest that the payment was made to the Defendant, a creditor, or that the Defendant received more than it would have if the transfer had not been made. Although the Defendant disputes the other three elements, the Court finds that it fails to

-4-

raise a genuine issue of material fact to preclude the Court from finding that the transfers are preferences under § 547(b).

**The Transfers Were Made for an Antecedent Debt**

Under § 547(b)(2), "a debt is antecedent if the debtor incurs it before making the alleged preferential transfer." *G.G. Survivor Corp. v. Harari (In re G. Survivor Corp.)*, 217 B.R. 433, 440 (Bankr. S.D.N.Y. 1998). Although the Code does not define "antecedent debt," it defines debt as "liability on a claim." 11 U.S.C. § 101(12). As relevant here, a claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5). Applying these definitions, courts in the Second Circuit have held that a debt is generally incurred when the debtor obtains a property interest in the consideration the creditor provided that gave rise to the debt. *Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Grp., Inc.)*, 220 B.R. 739, 742 (2d Cir. B.A.P. 1998)("The consideration may have been a loan or the furnishing of goods or services, but when the debtor obtained the loan, goods or services, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not made at the time a petition was filed. At that point the debt was 'antecedent' for purposes of Section 547(b)(2)."); *see Bruno Mach. Corp. v. Troy Die Cutting Co., LLC (In re Bruno Mach. Corp.)*, 435 B.R. 819, 837 (Bankr. N.D.N.Y. 2010); *see also Official Comm. Of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 46–49 (Bankr. S.D.N.Y. 2006).

The Defendant's accounts receivable records make clear that the Defendant performed and billed for the services underlying the debt throughout 2014. (ECF No. 21, Ex. C.) The Defendant's right to payment arose when the work was performed. Therefore, the Debtor

-5-

incurred the debt for those services, at the latest, on the date of the invoices, which were all over a year before the payment was made. *See Geltzer v. Fleck (In re ContinuityX, Inc.)*, 569 B.R. 29, 34–35 (Bankr. S.D.N.Y. 2017). The Defendant's argument that the debt is not incurred until the payment is due is not supported by case law. *See Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, 2016 WL 1069303 at *10 (Bankr. S.D.N.Y. March 17, 2016); *Fisher v. New York City Dept. of Hous. Pres. And Dev. (In re Pan Trading Corp., S.A.)*, 125 B.R. 869, 875 (Bankr. S.D.N.Y. 1991); *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 347 (Bankr. S.D.N.Y. 1999). Rather, the Defendant's right to payment arose when the services were performed and the Defendant's right to payment accrued.[3] Therefore, the two transfers were on account of an antecedent debt.

**The Debtor was Insolvent at the Time of the Transfer**

"For the purposes of [§ 547], the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f); *see Geltzer*, 569 B.R. at 36. A creditor may rebut the presumption by introducing "some evidence" that the debtor was not insolvent at the time of the transfer. *See Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996); *Nisselson*, 2016 WL 1069303 at *10. If the creditor introduces such evidence, then the trustee must then establish insolvency by a preponderance of the evidence. *Id.*

In its response and at oral argument, the Defendant refers to the "Debtor's 3 year business plan" and emails between the executives of the Debtor and the Defendant as evidence of the

---

[3] In any event, if the Debtor did incur any additional debt under the terms of the Agreement, that debt was incurred on the date Alex Lieb signed the Agreement on behalf of the Debtors. As this date preceded either payment, any additional debt would nevertheless be antecedent debt.

Debtor's solvency at the time of the transfers.[4] (ECF No. 21 at 4.)  However, the only formal business plan in the record appears to have been created post-petition and reflects projections from January 2016 to December 2018.  Because the business plan provides no details of the Debtor's financial state when the transfers occurred in March 2015, it is insufficient to raise a triable issue of fact as to the Debtor's solvency.  *See Cellmark Paper Inc. v. Ames Merch. Corp. (In re Ames Dep't Stores, Inc.)*, 506 Fed. App'x. 70, 72–73 (2d Cir. 2012).  Moreover, general statements made by executives for the Debtor regarding the financial health of the Debtor leading up to the bankruptcy alone do not rebut the presumption.  *See Tire Kings of Am., Inc. v. Hoffman Tire Co., Inc. (In re Tire Kings of Am., Inc.)*, 164 B.R. 40, 42 (Bankr. M.D. Pa. 1993); *see also Maloney–Crawford, Inc. v. Huntco Steel, Inc. (In re Maloney–Crafword, Inc.)*, 144 B.R. 531, 535 (Bankr. N.D. Okla. 1992).  Therefore, without any countervailing evidence of the Debtor's solvency at the time of the transfers, the Trustee is entitled to stand upon the presumption of insolvency.

**The Transfers Were Made Within 90 days of the Filing of the Petition**

For the purposes of § 547(b), when a creditor is given an ordinary business check, the date of the transfer is the date the check is honored, not the date it is signed or delivered.  *Barnhill v. Johnson*, 503 U.S. 393, 401 (1992).  While the Defendant states at oral argument that the *Barnhill* rule should not apply here, the Defendant admits that there is no case law to support that proposition.  As such, the Court finds no reason to deviate from Supreme Court precedent.  The Defendant admits that the checks were cashed on March 2, 2015, and March 30, 2015, and

---

[4] The Business Plan is attached to an email sent from Toni Popolizio at US Light Energy to David Ellis and Joseph Gross on February 12, 2016.  The Defendant did not include the email and its attachments, including the Business Plan, in the electronic copy of the response. (ECF No. 19.)

the petition was filed on May 27, 2015.  Therefore, the transfers occurred within 90 days of the filing of the petition.

## AFFIRMATIVE DEFENSES

The Defendant argues that even if these transfers were preferences under § 547(b), the Trustee may not avoid them as (1) the payments were in exchange for the Defendant's delay in filing mechanic's liens on the projects and thereby constituted contemporaneous exchange of new value; and (2) the payments were made in the ordinary course of business.  The Trustee contends that no new value was provided when the payments were made and under the facts here the delay in filing a mechanic's lien does not constitute new value.  The Trustee further argues that there is no evidence that the transaction that occurred here was in the ordinary course of the Debtor.

**The Defendant Fails to Establish a Defense under 11 U.S.C. § 547(c)(1)**

A creditor may defeat a trustee's attempt to avoid a preference by proving certain affirmative defenses.  *See* 11 U.S.C. § 547(c).  Section 547(c)(1) provides that the trustee may not avoid an otherwise avoidable transfer to the extent such transfer was "intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor" and was "in fact a substantially contemporaneous exchange."  11 U.S.C. § 547(c)(1); *see John Nagle Co. v. McCarthy*, 539 B.R. 205, 211 (N.D.N.Y. 2015), *affirmed* 667 Fed. App'x. 334 (2016).  The creditor bears the burden of proof as to all of these elements.  11 U.S.C. § 547(g).  When a payment made within the preference period is applied to an existing obligation, it is not a 'contemporaneous exchange' pursuant to 11 U.S.C. § 547(c)(1).  *Sanyo Electric, Inc. v. Taxel*, 78 B.R. 239, 241 (B.A.P. 9th Cir. 1987).

The Defendant contends that it either waived or deferred its right to file a mechanic's lien on the various installations as part of the agreement leading to the confession of judgment. The Defendant further argues that the parties intended the forbearance to be, and in fact was, a contemporaneous exchange of new value for the preferential payments. The Trustee counters that under New York law, the Defendant had no right to file a mechanic's lien on the installations. Moreover, the Trustee argues that forbearance does not constitute new value under § 547(c)(1). Alternatively, the Trustee argues that, as the Defendant's mechanic's liens would be primed by M&T Bank's lien on personal property, even if the forbearance constituted new value, the amount of the new value would be zero.

The Court need not determine whether the Defendant was entitled to file mechanic's liens or whether it's alleged forbearance of that right constitutes new value for the purposes of 11 U.S.C. § 547(c)(1). Even assuming those facts, *en arguendo*, the evidence demonstrates that the parties did not intend for the transfers to be contemporaneous exchanges for new value. The Trustee is seeking to avoid payments, made pursuant to the Agreement, one and two months after the Defendant allegedly gave up its right to file its mechanic's liens.[5] The Agreement clearly contemplates credit terms, including payments being made over 11 months and interest of 18% annually accruing and amortized over the that time. Given the gap in time between when the Defendant allegedly provided the new value and the payments at issue, and the inclusion of

---

[5] The Agreement makes no reference to the Defendant's rights to file mechanic's liens. Rather, it states that the Agreement is "[i]n consideration for Gross Electric, Inc.'s willingness to allow payments of the amount due over time." Based upon this language, the Agreement would appear to be an obligation substituted for an existing obligation, which is not "new value" for purposes of § 547. 11 U.S.C. § 547(a)(2). Nevertheless, the Court need not reach any determination regarding the terms of the Defendant's forbearance, whether it was part of the agreement at all, whether such forbearance, or any additional secondary benefits that flowed from that forbearance, constitutes new value, *see Buchwald Capital Advisors LLC, v. Met–Span I., Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 338–340 (Bankr. S.D.N.Y. 2006), or the value, if any, of such forbearance. Such determinations are irrelevant because, even if the Court were to find in the Defendant's favor on each issue, the Defendant failed to demonstrate a genuine issue of material fact as to whether the parties intended any exchange to be contemporaneous.

credit terms in the Agreement, the evidence establishes the transfers were not intended to be contemporaneous. *See Katz v. Ida K. Stark Tr. (In Re Van Dyck/Columbia Printing)*, 289 B.R. 304, 313 (D. Conn. 2003); *Miller v. Pernini (In re A.J. Lane & Co., Inc.)*, 164 B.R. 409, 419 (Bankr. D. Mass. 1994); *Dietz v. Calandrillo (In re Genmar Holdings, Inc.)*, 776 F.3d 961, 964–965 (8th Cir. 2015). Gross's conclusory statement that the agreement was "for new or contemporaneous value" is insufficient to raise a triable issue of fact. *See Post–Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Building Holdings, Inc.)*, 473 B.R. 168, 176 (Bankr. S.D. Tex. 2012). As a result, viewing the evidence in the light most favorable to the Defendant, the transfers at issue are ineligible for the contemporaneous exchange defense. *Weisfelner v. LR2 Mgmt. (In re Lyondell Chem. Co.)*, 2015 WL 5560283 at *5–6 (Bankr. S.D.N.Y. September 18, 2015). The Defendant's first affirmative defense is dismissed.

**The Defendant Fails to Establish the Payments Were Made in the Ordinary Course or pursuant to Ordinary Terms**

Under § 547(c)(2), the Trustee may not avoid a transfer to the extent the transfer was in payment of a debt incurred in the ordinary course of business and the transfer was either "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms." 11 U.S.C. § 547(c)(2). "Section 547(c)(2) is meant to protect 'recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee.'" *Pereira v. United Parcel Serv. of Am. (In re Waterford Wedgwood USA, Inc.)*, 508 B.R. 821, 827 (Bankr. S.D.N.Y. 2014)(quoting *Official Comm. Of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007). Following the BAPCPA[6] amendments, a

---

[6] On April 20, 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, 119 Stat. 23 (2005), which substantially amended the Code.

defendant now needs only to prove the debt was incurred in the ordinary course and either the "subjective" test under Section 547(c)(2)(A) or the "objective" test under Section 547(c)(2)(B). *See Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010).

To establish a transfer is in the ordinary course under the subjective test, the Defendant must "establish a 'baseline of dealings,' and show that the transfers were consistent with the parties' prior course of dealings." *Bruno Machinery Corp.*, 435 B.R. at 840. Courts also consider factors such as the amount of payment, the timing of payments, circumstances surrounding the payments, the existence of any unusual debt collection practices, and changes in the means of payments. *Official Comm. Of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Serv., Inc. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005). However, the focus is the prior dealings of the individual parties and the history of their interactions. *See McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.)*, 210 B.R. 27, 34 (N.D.N.Y. 1997), *aff'd,* 142 F.3d 571 (2d Cir. 1998).

Under the objective test, a creditor must "demonstrate that the terms of a payment for which it seeks the protection . . . fall within the bounds of ordinary practice of others similarly situated." *Lawson*, 78 F.3d at 41. Payments made pursuant to a debt restructuring agreement, even made when the Debtor is in default, may qualify as ordinary if frequent debt rescheduling is ordinary and usual practice within the industry. *Id.* at 41–42.

The invoices, an affidavit from David Ellis, one of the people responsible for the Debtor's management, and an affidavit from Joseph Gross, the President of the Defendant, establish, and the Trustee does not appear to dispute, that the Debtor incurred the debts in the

ordinary course of its business. However, the Court finds that the Defendant fails to meet its burden under both the objective and subjective tests, as discussed below.

In his Motion for Summary Judgment, the Trustee asserts that the Debtor did not customarily provide the Defendant with affidavits in support of confession by judgment and that such agreements are not customary in the solar industry. (ECF No. 10, ¶ 15.) Additionally, Ellis's affidavit states that "[the Debtor] did not enter affidavits of confession of judgement as part of the ordinary course of its relationship with Gross."[7] These statements satisfy the Trustee's burden on summary judgment and shift the burden to the Defendant to demonstrate a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–324.

The Defendant has failed to establish any pattern of ordinary course between the parties. As to the parties' prior dealings, the Defendant states "[the Debtor] and [the Defendant] frequently discussed and reached different payment terms and different payment schedules, ultimately resulting in an agreement for new terms set forth in an affidavit confessing judgment . . . ." (ECF No. 21, ¶ 15.) In his affidavit, Gross stated that there were no written agreements regarding the transactions between the Debtor and the Defendant. (ECF No. 21.) Gross indicates that, because the Debtor's payments depended upon funding from third parties, the Debtor and Defendant were in "continuous contact . . . discussing payment time frames and issues." Gross stated that the payment terms and schedule were adjusted to suit the Debtor several times. Yet, the Defendant fails to provide evidence of the circumstances and timing of any actual payments.

---

[7] The Defendant argues that Ellis is not competent to testify regarding the transactions with Gross. (ECF No. 21, ¶ 3.) Without passing judgment on that specific argument, the Court finds, and the Defendant does not appear to dispute, that Ellis's position as a manager in the company would make him competent to testify regarding the organization's general practices.

Rather than evidencing a flexible payment schedule based on third party payments, the emails and documents submitted demonstrate an increasingly frustrated creditor seeking to be paid. On or about September 2, 2014, Gross sent an email to employees at the Debtor stating, "Last I was informed we would receive $25,000 week [sic] until mid-August paying to current, which neither has taken place. This needs to be addressed today." (ECF No. 21, Exh. C.) On or about October 28, 2014, Gross sent another email to Leib stating, "Please respond to what commitment you can make to pay all open invoices as we need a firm commitment to be able to properly manage Gross Electric. We have been very patient and given your firm an extreme amount of relief however we need to know when and how much you can commit too, [sic] in order to move forward." *Id.* These conversations appear to have resulted in a letter from Keith Goldstein, the General Counsel of the Debtor, to Gross that proposes a payment of $400,000 by November 14, 2014, a second payment of $400,000 by March 31, 2015, and the balance paid by June 30, 2015. *Id.* The letter discusses some of the Debtor's plans to obtain financing for the payments. On or about November 26, 2014, an employee for the Defendant sent an email to Goldstein stating the Defendant received a payment in the amount of $161,927, not the $400,000 promised. *Id.* Goldstein sent an email on or about December 1, 2014, in which he indicates that the Debtor would be receiving funding from other projects, not described in the earlier letter, which the Debtor would use to make another partial payment to the Defendant. *Id.* Goldstein sent an email approximately two weeks later indicating that partial payment would again be delayed. *Id.*

These emails from the fall of 2014 indicate that the Defendant and the Debtor would agree on a payment schedule, the Debtor would fail to make the agreed payments, and then the Defendant would agree on a new payment schedule. The ordinary course does not appear to be a

flexible payment schedule based on receipts, as the Defendant argued at oral argument. Rather the ordinary course appears to be a history of sporadic non-payment, late payments, and partial payments, leading the Defendant to create the Agreement which, based on the record, appears to be unprecedented between the parties. Given the evidence of increasing collection efforts and the lack of evidence that the parties have previously used Affidavits of Confession of Judgments to define the terms of payment, the Court finds the Defendant has failed to raise a genuine issue of material fact as to whether the payments here were made in the ordinary course of business of the Debtor and the Defendant. *See Burtch v. Revchem Composites, Inc. (In re Sierra Concrete Design, Inc.)*, 463 B.R. 302, 306 (D. Del. 2012).

As to the objective test, the Defendant fails to submit any evidence to support the proposition that the pattern described above, ending in an Affidavit in Confession of Judgment, is ordinary in the solar industry. There is no expert affidavit or statement from Gross that asserts such a proposition. On the contrary, the Trustee alleged in his Statement of Material Facts for Which There is No Genuine Issue that "[i]t is not customary industry practice for businesses like [the Debtor] to enter affidavits in support of judgment by confession . . . ." (ECF No. 10.) The Defendant responded to that statement in its Supplemental Statement of Disputed Material Facts that "[i]ndustry practice is not relevant to the actual transaction between [the Defendant] and [the Debtor], and [the Debtor's] business relationships, including with [the Defendant], were unique." (ECF No. 21.) Based on this statement and the lack of evidence in the record concerning industry practice, the Court finds that the Defendant has failed to meet its burden on this issue. Therefore, the Defendant's second affirmative defense is dismissed.

## CONCLUSION

For the foregoing reasons, the Court finds the Trustee may avoid the two transfers described in the complaint.[8]  Given the Defendant admits receipt of the checks and does not argue that it was not the initial transferee for whose benefit the transfer was made, the Court finds the Trustee may recover, for the benefit of the estate, the value of the property transferred. 11 U.S.C. § 550.

Further, pursuant to 11 U.S.C. § 502(d), the Defendant's claim is disallowed until and unless the Defendant has paid the amount for which it is liable under § 550.  For the reasons stated above, the Trustee's Motion for Summary Judgment is granted as to Counts I, IV, and V of the Complaint.

It is SO ORDERED.

Dated: September 28, 2018                                  /s/ Robert E. Littlefield, Jr.
       Albany, New York                                    Robert E. Littlefield, Jr.
                                                           United States Bankruptcy Judge

---

[8] Given this finding, the Trustee's second cause of action to avoid the transfers as fraudulent conveyances under 11 U.S.C. § 548 and third cause of action to avoid the transfers as unauthorized postpetition transfers under 11 U.S.C. § 549 are moot.